**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>RAC Dealership, LLC,<br><br>      Debtor. | Chapter 7<br><br>Case No. 23-10318 (BLS)<br><br>**Objection Deadline: TBD**<br>**Hearing Date: TBD** |

**JOINT MOTION OF NEXTGEAR CAPITAL, INC. AND HANCOCK
WHITNEY BANK, AS ADMINISTRATIVE AGENT UNDER
THE HWB CREDIT AGREEMENT, FOR AN ORDER GRANTING
RELIEF FROM THE AUTOMATIC STAY TO EXERCISE STATE LAW
REMEDIES, INCLUDING BUT NOT LIMITED TO, LIQUIDATING AND APPLYING
PROCEEDS OF REPOSSESSED COLLATERAL AND REMAINING COLLATERAL**

  NextGear Capital, Inc. ("NextGear") and Hancock Whitney Bank, in its capacity as administrative agent for certain lenders from time to time party to the HWB Credit Agreement ("HWB", and together with NextGear, the "Movants"),[1] file this motion (the "Motion"), pursuant to sections 105 and 362 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), seeking entry of an order, substantially in the form attached hereto (the "Proposed Order"), (i) modifying the automatic stay, to the extent necessary, so that the Movants may exercise all of their rights and remedies in the Repossessed Collateral, including auctioning the subject vehicles, and as otherwise set forth in the Proposed Order, (ii) modifying the automatic stay as to the Remaining Collateral, and (iii) granting related relief. In support of this Motion, the Movants submit the *Declaration of*

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them below.

*Eric Brown, Director of Credit and Collections for NextGear Capital, Inc., in Support of the Motion* (the "Brown Declaration")[2] attached as **Exhibit A** and respectfully represent as follows:

### Jurisdiction and Venue

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(G). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested in this Motion are sections 105 and 362 of the Bankruptcy Code, Bankruptcy Rule 4001, and Local Rule 4001-1.

3. Pursuant to Local Rule 9013-1(f), the Movants consent to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

### Background

**A.     The Relationship Between the Debtor and NextGear**

4. On or about November 14, 2017, Debtor RAC Dealership, LLC, a Delaware limited liability company (the "Debtor") and NextGear entered into that certain Demand Promissory Note and Loan and Security Agreement (as amended, supplemented, or otherwise modified, the "NextGear Note") through which NextGear provided the Debtor with a floor plan line of credit in

---

[2] A separate declaration from a representative of HWB will be filed shortly as a supplement.

2

order to allow the Debtor to finance certain of its motor vehicle inventory.  A true and accurate copy of the NextGear Note is attached hereto as **Exhibit B**.

5.　　As security for its obligations under the NextGear Note, the Debtor granted NextGear a security interest in and to all of the Debtor's assets and properties, wherever located, including, without limitation, all equipment of any kind or nature, all vehicles, vehicle parts, and inventory then owned or thereafter acquired, without limitation, purchase money inventory, the purchase of which was financed or floor planned by NextGear for Debtor of whatever kind or nature, and all returns, repossessions, exchanges, substitutions, attachments, additions, accessions, accessories, replacements, and proceeds thereof; all accounts, accounts receivable, chattel paper, and general intangibles now owned or thereafter acquired, together with the proceeds thereof; all documents, books and records relating thereto (collectively, the "NextGear Collateral").

6.　　NextGear perfected its security interest in the NextGear Collateral by filing a UCC Financing Statement on the Debtor with the Delaware Secretary of State.  As additional notice to the Debtor's creditors and potential creditors of NextGear's security interest in the Debtor's assets, NextGear also filed UCC Financing Statements with the secretaries of state in certain other states in which the Debtor was operating, including Tennessee, Alabama, Florida, and Mississippi.  True and correct copies of the UCC financing statements, amendments, and continuation statements are attached hereto as composite **Exhibit C**.  Other creditors may assert liens in the NextGear Collateral, but NextGear holds a perfected security interest therein subject to the Intercreditor Agreement (defined below).

B.　　**The Relationship Between the Debtor and HWB**

7.　　To finance its acquisition of certain of its vehicle inventory, the Debtor, certain of its affiliates, certain lenders, and HWB as Administrative Agent and lender, entered into that

certain Credit Agreement dated as of June 29, 2021 (as modified by that certain Waiver Agreement dated as of February 17, 2022, that certain Forbearance Agreement and First Amendment to Credit Agreement dated as of September 27, 2022, and that certain Second Amendment to Credit Agreement and Waiver dated as of October 5, 2022, the "HWB Credit Agreement"). A copy of the HWB Credit Agreement is attached as **Exhibit D**.

8. In connection with the execution of the HWB Credit Agreement and as a condition to its effectiveness, the parties entered into that certain Security Agreement dated as of June 29, 2021, pursuant to which the Debtor granted HWB a security interest in, among other things, all of the Debtor's vehicles, vehicle parts, and inventory.

9. On October 5, 2022, in connection with that certain Second Amendment to Credit Agreement and Waiver dated as of October 5, 2022, the parties entered into that certain Security and Pledge Agreement dated as of October 5, 2022 (the "Security and Pledge Agreement"), pursuant to which the Debtor granted HWB a security interest in all of the Debtor's assets (collectively, the "HWB Collateral"). Section 2 of the Security and Pledge Agreement provides the following granting language and description of collateral:

> To secure the prompt payment and performance in full when due, whether by lapse of time, acceleration, mandatory prepayment or otherwise, of the Secured Obligations, each Obligor hereby grants to the Administrative Agent, for the benefit of the holders of the Secured Obligations, a continuing security interest in, and a right to set off against, any and all right, title, and interest of such Obligor in and to all of the following, whether now owned or existing, or owned, acquired or arising hereafter (collectively, the "Collateral"): (a)(i) all Accounts, (ii) all Chattel Paper, (iii) those certain Commercial Tort Claims set forth on Schedule 2 hereto, (iv) all Copyrights, (v) all Copyright Licenses, (vi) all Deposit Accounts, (vii) all Documents, (viii) all Equipment, (ix) all Fixtures, (x) all General Intangibles, (xi) all Goods, (xii) all Instruments, (xiii) all Inventory, (xiv) all Investment Property, (xv) all Letter-of-Credit Rights, (xvi) all Money, (xvii) all Patents, (xviii) all Patent Licenses, (xix) all Payment Intangibles, (xx) all Pledged Equity, (xxi) all Securities Entitlements, (xxii) all Software, (xxiii) all Supporting Obligations, (xxiv) all Trademarks, (xxv) all Trademark Licenses, (xxvi) all books and records relating to

the foregoing Collateral, and (xxviii) all Accessions; and (b) all Proceeds of any and all of the foregoing.

10. HWB perfected its security interest in the Collateral by filing UCC Financing Statements with the Office of the Delaware Secretary of State, in the Debtor's state of organization. True and correct copies of the UCC financing statements are attached hereto as composite **Exhibit E**.

C.      **The Intercreditor Agreement Between NextGear, HWB, and the Debtor**

11. On or about June 29, 2021, NextGear, HWB, and the Debtor entered into that certain Intercreditor Agreement (the "Intercreditor Agreement") pursuant to which NextGear and HWB agreed to the relative priority of their security interests in the Debtor's inventory and the proceeds thereof. The Debtor acknowledged and agreed to the Intercreditor Agreement. A true and correct copy of the Intercreditor Agreement, together with a subsequent amendment thereto, is attached hereto as **Exhibit F**.

12. In summary, pursuant to the Intercreditor Agreement, the Movants agreed that NextGear-financed inventory would be subject to a first priority security interest in favor of NextGear. Likewise, if HWB financed inventory for the Debtor, then HWB would have a first priority security interest in HWB-financed inventory. If both Movants financed the same item of inventory, the first to finance the specific vehicle would have first lien priority in such vehicle.

D.      **The Debtor's Voluntary Prepetition Surrender of HWB's Vehicle Collateral**

13. On or about February 27, 2023, the Debtor informed NextGear and HWB (through counsel) of the Debtor's intention to cease operations immediately and to file for relief under the Bankruptcy Code. The Debtor also indicated to NextGear and HWB (through counsel) the Debtor's request to voluntarily surrender possession of the NextGear-financed inventory to

NextGear and the HWB-financed inventory to HWB prior to the filing of the Debtor's bankruptcy. After advising the Movants of the Debtor's intentions in this regard, the Debtor facilitated an introduction between NextGear and HWB, so that NextGear and HWB could coordinate the repossession of all vehicle collateral pre-bankruptcy.

14.  In connection with the repossession process, on February 28, 2023, HWB and NextGear entered into that certain Transportation Agreement, which was acknowledged by the Debtor. A true and correct copy of the Transportation Agreement is attached as **Exhibit G**. Pursuant to the Transportation Agreement, NextGear, through Strategic Remarketing Solutions, repossessed vehicle collateral at numerous locations in ten states, and delivered all of the repossessed vehicle collateral (collectively, the "Repossessed Collateral") to multiple auction houses. The Repossessed Collateral is currently being stored in the auction houses (the "Auction Houses").

15.  As noted, in connection with the execution of the Transportation Agreement, the Debtor executed an acknowledgment, which provides:

> RAC Dealership, LLC ("RAC") has informed NextGear Capital and HWB (each a "Secured Party" and together, the "Secured Parties") that RAC intends to voluntarily surrender possession of certain collateral securing its obligations to the Secured Parties, which voluntary surrender is acceptable to the Secured Parties and which the Secured Parties desire to effectuate expeditiously. Such collateral to be surrendered to the Secured Parties consists of, inter alia, certain motor vehicle inventory of RAC and related titles and keys that can reasonably be made available for surrender to the Secured Parties (the "Inventory"). RAC hereby consents to the repossession by either or both Secured Parties, or their respective agents, of the Inventory of RAC. For avoidance of doubt, such repossession is not intended to constitute a strict foreclosure, or partial strict foreclosure, of such Inventory.
>
> In connection therewith, RAC hereby waives any and all rights it may have to notice prior to seizure by either Secured Party of any such Inventory. Consistent with certain of the debt documents entered into with the Secured Parties, RAC further acknowledges that: (i) the private sale of any Inventory at the amount then owed to either Secured Party on such Inventory, less costs reasonably incurred by the

respective Secured Party in preparation of disposition of such Inventory, shall be a commercially reasonable method of disposition of such Inventory; (ii) any Inventory repossessed or otherwise obtained by either Secured Party may be disposed of by Secured Party, in Secured Party's sole discretion, at any regular or online sale of any wholesale auto auction that may be an Affiliate of a Secured Party, or at any National Auto Auction Association member, and, in each case, any such a sale is and shall be deemed commercially reasonable for all purposes; (iii) RAC shall be liable to the Secured Parties for any deficiency resulting from the Secured Parties' disposition of the Inventory in accordance with the respective loan documents; (iv) the Inventory is of the type customarily sold on a recognized market and that the Secured Parties therefore have no obligation to notify RAC prior to a sale of the Inventory; and (v) the Secured Parties shall not be responsible for the accuracy or validity of any document or for the existence or value of any Inventory.

16. On February 28, 2023, HWB delivered to the Debtor that certain Notice of Default, Acceleration, Demand for Payment, and Reservation of Rights letter of even date. A copy of this notice is attached as **Exhibit H**.

E. **The Proposed Foreclosure Sale Process Through the Auction Houses**

17. As of the date hereof, the Movants, by and through the Auction Houses, are poised to move forward with sales of the Repossessed Collateral in accordance with applicable state law, upon entry of an order by this Court granting relief from the automatic stay so that such sales may proceed.

18. Upon the completion of each sale, each Movant, as applicable, would ensure the distribution of sale proceeds in accordance with Section 9-615(a) of the UCC. Such proceeds would be applied:

- *First*, to any reasonable expenses of retaking, holding, preparing the Repossessed Collateral for disposition, disposing of the Repossessed Collateral, and any other reasonable expenses associated with the repossession and disposition of the Repossessed Collateral.

- *Second,* to the outstanding amount of the obligations owing by the Debtor under the NextGear Note or the HWB Credit Agreement and other Loan Documents, as

applicable, and secured by the NextGear Collateral or the HWB Collateral, respectively.

- *Third*, to the chapter 7 trustee for distribution to holders of any lower priority security interests or liens on the Repossessed Collateral and thereafter in accordance with the Bankruptcy Code.

**F.    The Bankruptcy Proceeding**

19.    On March 14, 2023, (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition for relief under chapter 7 of the Bankruptcy Code.

20.    The total prepetition principal balance owed by the Debtor to NextGear, inclusive of all interest and fees accrued under the NextGear Note, was not less than $15,364,688.40 (the "NextGear Petition Date Balance").

21.    In addition to the NextGear Petition Date Balance, interest, fees, and other charges under the NextGear Note continue to accrue under the Note.

22.    Interest under the NextGear Note accrues on all Liabilities under the Note on a "compounded daily" basis. Therefore, there is no true "per diem" rate on the outstanding balance as a whole.

23.    The total amount of outstanding indebtedness, inclusive of interest and fees, under the HWB Credit Agreement and other Loan Documents (as defined in the HWB Credit Agreement) as of the Petition Date was not less than $31,968,216.86 (the "HWB Petition Date Balance"), consisting of (i) a due and unpaid Overadvance Term Loan in the amount of $15,800,000.00 in principal and $165,900.00 in accrued interest, (ii) due and unpaid Revolving Loans in the amount of $14,999,549.89 in principal, $185,566.17 in accrued interest, and $33.26 in unused fees, and (iii) Banking Services Obligations in the amount of $817,167.57.

24.    In addition to the HWB Petition Date Balance, interest, fees, and other charges under the HWB Credit Agreement continue to accrue.

25. Interest under the HWB Credit Agreement accrues (i) on the Overadvance Term Loan at a rate of $3,950.00 per day, (ii) on a tranche of $11,881,55.70 of Revolving Loans at a rate of $3,662.12 per day, and (iii) on a tranche of $3,117,999.19 of Revolving Loans at a rate of $798.35 per day.

26. As of the Petition Date, certain collateral including, without limitation, chattel paper relating to recently leased vehicles remains with the Debtor (collectively, the "Remaining Collateral"), in which NextGear claims a first priority, perfected security interest. HWB claims a first priority, perfected security interest in those specific vehicles among the Remaining Collateral for which HWB provided financing to the Debtor prior to NextGear providing financing for such vehicles, and claims a second priority, perfected security interest in the remainder of the Remaining Collateral. The Remaining Collateral also includes certain vehicles which may remain on the Debtor's lots but are subject to the Movants' security interests.

27. The balance of the debt owed by the Debtor to the Movants far exceeds the value of the Repossessed Collateral. As shown by the Manheim Market Report ("MMR") values listed on **Exhibit I** attached hereto, the Repossessed Collateral in which NextGear claims a first priority, perfected security interest totals $11,753,350.

28. Likewise, as shown by the MMR values listed on **Exhibit J** attached hereto, the Repossessed Collateral in which HWB claims a first priority, perfected security interest (not all of which has been recovered as of the Petition Date) is anticipated to be equal to or less than $13,009,989.00.

29. The Debtor does not have any resources to service the chattel paper related to the Remaining Collateral, and the Remaining Collateral, including such related chattel paper, remains subject to both Movants' perfected security interests. The anticipated stream of income securing

the Movants' security interests in the Remaining Collateral and all proceeds thereof—even once a servicing agent for such chattel paper has been identified and retained—is unlikely to equal or exceed the anticipated deficiency balance owed to the Movants after the Repossessed Collateral has been liquidated.

30. Accordingly, the Debtor has no equity in the Repossessed Collateral or the Remaining Collateral that would benefit the Debtor's bankruptcy estate.

31. The Movants therefore each seek to liquidate their respective Repossessed Collateral and Remaining Collateral to reduce the balances owing to NextGear under the Note and owing to HWB under the HWB Credit Agreement.

## Relief Requested

32. In accordance with sections 105 and 362 of the Bankruptcy Code, NextGear and HWB jointly seek relief from the automatic stay to the extent necessary to permit them to exercise their state law rights and remedies in the Repossessed Collateral and the Remaining Collateral.

33. The Movants seek to liquidate the Repossessed Collateral through one or more Auction Houses using commercially reasonable methods. The Movants shall each then apply the net proceeds of such sales to the balances owing under the NextGear Note and the HWB Credit Agreement, respectively.

34. The Movants seek to collect and liquidate the Remaining Collateral. The Movants shall each then apply the next proceeds of the Remaining Collateral to the balances owing under the NextGear Note and the HWB Credit Agreement, respectively.

**Basis for Relief Requested**

A. **Applicable Law**.

35. The Movants seek relief from the automatic stay pursuant to section 362(d)(1) and section 362(d)(2) of the Bankruptcy Code to facilitate the orderly liquidation of the Collateral.

36. The automatic stay is not intended to be indefinite or absolute, and relief from the stay may be granted in appropriate circumstances. *Wedgewood Inv. Fund, Ltd. V. Wedgewood Realty Group. Ltd (In re Wedgewood),* 878 F.2d 693, 697 (3d Cir. 1989). Specifically, bankruptcy Code section 362(d) contemplates relief from the automatic stay in appropriate circumstances, and provides:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay ...
> (1) for cause …; [or]
> (2) with respect to a stay of an act against property under subsection (a) of this section, if—
> (A) the debtor does not have an equity in such property; and
> (B) such property is not necessary to an effective reorganization

11 U.S.C. § 362(d)(1) and (d)(2).

37. The Bankruptcy Code does not define cause for section 362(d)(1) purposes, leaving courts to consider what constitutes cause based on the totality of the circumstances in each particular case. *Baldina v. Wilson (In re Wilson),* 116 F.3d 87, 90 (3d Cir. 1997) *(citing Trident Assocs. V. Metropolitan Life Ins. Co. (In re Trident Assocs),* 52 F.3d 127 (6th Cir. 1995)).

38. In this District, the courts have adopted a three-factor test to determine whether sufficient cause exists to justify stay relief: (1) whether any great prejudice to the debtor (or estate) will result from granting stay relief; (ii) whether the hardship to the bankrupt party by maintenance

of the stay considerably outweighs hardship to the debtor; and (iii) whether the creditor has a probability of prevailing on the merits. *In re Unidigital, Inc.,* Case No. 00-3806, 2000 WL 33712306 at *1 (Bankr. D. Del. Dec. 8, 2000) (citing *In re Rexene Products Co.,* 141 B.R. 574, 576 (Bankr. D. Del. 1992)); *Alliance Assocs. V. Integrated Health Services, Inc. (In re Integrated Health Services, Inc.),* Case No. 00-389, 2000 WL 33712483 at *1 (Bankr. D. Del. Aug. 11, 2000); *American Airlines, Inc. v. Continental Airlines, Inc. (In re Continental Airlines, Inc.),* 152 B.R. 420, 424 (Bankr. D. Del. 1993) *(citing Int'l. Business Machines v. Fernstrom Storage & Van Co. (In Fernstrom Storage & Van Co.),* 938 F.2d 731, 734-37 (7th Cir. 1991)).

39. Additionally, pursuant to Section 362(d)(2), once a creditor "establishes that he is an undersecured creditor, it is the burden of the *debtor* to establish that the collateral at issue is 'necessary to an effective reorganization.'" *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 375 (1988).

40. Several courts have held that, given that in a liquidation under Chapter 7 there is no option for the debtor to reorganize, the only question for the court under Section 362(d)(2) is whether the creditor is undersecured. *In re D/C Distrib., LLC*, 617 B.R. 600, 608 (Bankr. N.D. Ill. 2020); *In re Dennen*, 539 B.R. 182, 188-189 (Bankr. D. Colo. 2015); *Hersperger v. United States, IRS (In re Hersperger)*, 2008 U.S. Dist. LEXIS 40639, *4 (W.D. Pa. March 14, 2008); *In re J & M Salupo Dev. Co.*, 388 B.R. 809, 812-813 (Bankr. N.D. Ohio 2008); *Rusiski v. Pribonic (In re Pribonic)*, 70 B.R. 596, 606 (Bankr. W.D. Pa. 1987).

B. **Relief from the Automatic Stay is Appropriate for Cause and Due to the Debtor's Lack of Equity in the Collateral.**

41. Here, cause exists because the Movants are not adequately protected in the Repossessed Collateral or the Remaining Collateral. This collateral is depreciating in value with

the passage of time. Based upon NextGear's experience in matters of this nature, the vehicles comprising the Remaining Collateral and the Repossessed Collateral will depreciate very quickly due to the seasonal nature of the automotive business. In particular, because many consumers will be receiving tax refunds in the near future, car dealers are ramping up their inventory now to have lots full when tax refunds arrive. Additionally, if the collateral is kept at the Auction Houses for more than the period of time that is customary to the industry, the Auction Houses will begin to charge storage fees to the Movants. Accordingly, prompt stay relief is appropriate to permit the collection and liquidation of this collateral.

42. Furthermore, for at least 575 of the vehicles that are subject to this Motion, there are consumers who purchased these vehicles who cannot currently register their cars because the titles are still in the Debtor's name. The title work needs to be processed immediately, putting the titles in the consumers' names with the proper lienholder on the face of each title, for each consumer to be able to register his or her car. The Debtor does not have any staff to handle this title work because substantially all of its employees have been terminated, and the chapter 7 trustee does not have the ability to handle work of this nature.

43. However, the Movants have the ability to address this quandary quickly because of their familiarity with this industry. If the registrations are not processed quickly, the consumers may claim a breach of contract against the Debtor, resulting in proofs of claim against this bankruptcy estate. This can be avoided by lifting the stay and letting the Movants handle the title processing. The stay would need to be lifted before the title processing can occur, or else the Movants risk claims that they violated the stay by transferring property (*i.e.*, the titles) to a third party without the consent of the bankruptcy estate or the chapter 7 trustee.

44. Additionally, the Movants are entitled to relief from the automatic stay because the Debtor has no equity in the Repossessed Collateral or the Remaining Collateral and, because this is a chapter 7 liquidation, no effective reorganization is possible. The MMR values of the Repossessed Collateral, when compared to the respective debt of the Movants, clearly indicate that the estate has no equity in the Repossessed Collateral.

45. The Movants have, therefore, demonstrated that sufficient cause exists to justify lifting the stay pursuant to section 362(d) of the Bankruptcy Code.

### C.  Waiver of the Fourteen (14) Day Stay under Bankruptcy Rule 4001(a)(3) is Appropriate.

46. Bankruptcy Rule 4001(a)(3) states that "[a]n order granting a motion for relief from an automatic stay . . . is stayed until the expiration of 14 days after the entry of the order, *unless the court orders otherwise*." FED. R. BANKR. P. 4001(a)(3) (emphasis added).

47. Due to the need to liquidate the Repossessed Collateral and Remaining Collateral quickly as described above, the Movants respectfully request that the customary fourteen (14) day stay imposed by Bankruptcy Rule 4001(a)(3) be waived.

### Conclusion

**WHEREFORE**, the Movants respectfully request entry of the Proposed Order (i) modifying the automatic stay so that they may exercise all of their rights and remedies in the Repossessed Collateral, including, without limitation, auctioning the vehicles, (ii) modifying the automatic stay as to the Remaining Collateral as set forth herein, and (iii) for such other and further relief as the Court may deem just and equitable.

Respectfully submitted this 17th day of March, 2023

| | |
|---|---|
| **POTTER ANDERSON & CORROON LLP** | **GREENBERG TRAURIG, LLP** |
| */s/ M. Blake Cleary* | */s/ Dennis A. Meloro* |
| M. Blake Cleary (No. 3614) | Dennis A. Meloro (DE Bar No. 4435) |
| Aaron H. Stulman (No. 5807) | 222 Delaware Avenue, Suite 1600 |
| 1313 North Market Street, 6th Floor | Wilmington, Delaware 19801 |
| Wilmington, Delaware 19801 | Telephone: (302) 661-7000 |
| Telephone: (302) 984-6000 | Facsimile:  (302) 661-7360 |
| Facsimile: (302) 658-1192 | Email: Dennis.Meloro@gtlaw.com |
| Email: bcleary@potteranderson.com | |
| Email: astulman@potteranderson.com | -and- |
| | |
| -and- | John D. Elrod |
| | Terminus 200 |
| Stephen E. Gruendel, Esq. (*pro hac vice* pending) | 3333 Piedmont Road NE, Suite 2500 |
| Zachary H. Smith, Esq. (*pro hac vice* pending) | Atlanta, Georgia 30305 |
| MOORE & VAN ALLEN PLLC | Telephone: (678) 553-2100 |
| 100 North Tryon Street, Suite 4700 | Facsimile:  (678) 553-2212 |
| Charlotte, NC 28202-4003 | Email: elrodj@gtlaw.com |
| Telephone: 704-331-1000 | |
| Facsimile: 704-331-1159 | *Counsel for NextGear Capital, Inc.* |
| Email: stevegruendel@mvalaw.com | |
| Email: zacharysmith@mvalaw.com | |
| | |
| *Counsel for Hancock Whitney Bank* | |

**CERTIFICATE OF SERVICE**

      I hereby certify that on March 17, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day via transmission of Notice of Electronic Filing generated by CM/ECF on all counsel of record or *pro se* parties who are authorized to receive electronically Notices of Electronic Filing in this bankruptcy case.

                                                  */s/ Dennis A. Meloro (No. 4435)*